**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**DON PLUMLEE, JAKIE HANAN, and
PETE EDWARDS, on behalf of themselves
and all others similarly situated**                                   **PLAINTIFFS**

       **v.**                                 **NO. 4:22-CV-638-KGB**

**STEEP HILL, INC.; STEEP HILL ARKANSAS;
BRENT WHITTINGTON; BRANDON THORNTON;
BOLD TEAM, LLC; NSMC-OPCO, LLC D/B/A
NATURAL STATE MEDICINAL; OSAGE CREEK
CULTIVATION, LLC; and JOHN DOES 1–10**                    **DEFENDANTS**

---

**BRIEF IN SUPPORT OF SEPARATE DEFENDANT NSMC-OPCO, LLC'S
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Comes now Separate Defendant NSMC-OPCO, LLC, by and through its attorneys, Barber

Law Firm PLLC, and for its Brief in Support of its Motion to Dismiss Plaintiffs' Class Action

Complaint, states:

## INTRODUCTION

In 2016, Arkansas voters approved Amendment 98 to the Arkansas Constitution, making

Arkansas one of the first southern states to establish a medical marijuana program.[1]  Five years

after this watershed moment, Arkansas maintains a well-established, heavily-regulated medical

marijuana program that includes, among other things:  (a) 38 licensed dispensaries, (b) 8 licensed

cultivators, (c) 4 licensed testing facilities, (d) 4 licensed processors, and (e) at least three separate

state regulatory agencies charged with overseeing various aspects of the industry.  In addition, the

---

[1]As of the date hereof, a total of 40 other states have legalized the cultivation and sale of either medical marijuana or adult-use marijuana, including four states that border Arkansas: Louisiana, Mississippi, Missouri, and Oklahoma.

Arkansas medical marijuana industry employs thousands of Arkansas residents and is supported by an untold number of legal, financial, and operational professionals, contractors, consultants, and other service providers.  Defendant NSMC-OPCO, LLC, which does business as Natural State Medicinals Cultivation ("NSMC"), is one of the eight cultivators who received a license to cultivate marijuana and, since receiving its license in 2018, has lawfully grown marijuana for sale to licensed dispensaries for further sale to registered Arkansas patients.  Plaintiffs Don Plumlee, Jakie Hanan, and Pete Edwards (collectively, "Plaintiffs") each allege to be among the 85,000 registered Arkansas patients who have successfully navigated the state application process and received a medical marijuana card issued by the State of Arkansas. Plaintiffs also allege to have purchased, possessed, consumed, transported, and facilitated the testing of marijuana cultivated by NSMC and other cultivators.  In short, Plaintiffs are not strangers to the Arkansas medical marijuana industry, rather they have been (and presumably continue to be) eager and skilled participants with considerable understanding of marijuana and its properties.

Despite acknowledging that they were fully aware of the Arkansas medical marijuana regulatory scheme and actively involved in the purchase, consumption, transportation, and testing of marijuana grown by the various Defendants in this case, Plaintiffs have concocted a theory alleging that the entire medical marijuana industry is part of a conspiracy to "inflate THC values for commercial gain." *Complaint*, at ¶ 61.  Plaintiffs further allege that, by virtue of the continuing federal illegality of marijuana, NSMC and any other participant in a state-legal marijuana program are engaged in illegal racketeering activity as proscribed by the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Based upon these allegations, Plaintiffs assert five claims under RICO plus a single state law-based claim alleging fraud and violations of the Arkansas Deceptive Trade Practices Act ("ADTPA").

NSMC resolutely denies Plaintiffs' allegations, but even accepting them as true for the purposes of this motion, the Court should dismiss Plaintiffs' claims.  First, Plaintiffs have not (and cannot) pled facts that would satisfy even the most basic requirements of the RICO statute in that they have not alleged any cognizable property damage, nor have they alleged that any such damage was caused by NSMC.  For that reason, Plaintiffs lack standing to assert RICO claims.  Second, even if the Plaintiffs could plead such facts (which they cannot), Plaintiffs' RICO claims are barred by the doctrine of *in pari delicto*.  Plaintiffs' own allegations confirm they purchased, possessed, consumed, transported, and facilitated the testing of marijuana in violation of the Controlled Substances Act and, as a result, are either complicit in any alleged RICO violation or, at the very least, have committed exactly the same offenses Plaintiffs allege serve as the foundation of this lawsuit.  Third, Plaintiffs' claims should be dismissed because, in order to fashion the remedy Plaintiffs seek, which includes, among other things, a request for disgorgement of marijuana profits to be placed into a "common fund" (*Complaint*, at ¶ 73), this Court would necessarily be required to order the transfer of federally-illegal proceeds earned from a federally-illegal marijuana operation to individuals who admittedly purchased, possessed, transported, and facilitated the testing of federally-illegal marijuana based on alleged damages tied to the marijuana they purchased.  Such a remedy would unquestionably contravene public policy and the underlying purpose of RICO.  Finally, the state-law claims should be dismissed because the Complaint fails to satisfy the heightened pleading requirements of the Federal Rules of Civil Procedure.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully.  *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016).  Courts should consider whether there are lawful, obvious alternative explanations for the alleged conduct, because where the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *McDonough v. Anoka County*, 799 F.3d 931, 946 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678, 682).

At this stage, the court must accept as true all the factual allegations contained in the complaint, *Twombly,* 550 U.S. at 572, and must draw all reasonable inferences in favor of the nonmoving party.  *Cole v. Homier Distrib. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010).  The complaint, however, must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly,* 550 U.S. at 555.  A district court is not required "to divine the litigant's intent and create claims that are not clearly raised" or "conjure up unpled allegations" to save a complaint.  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir.

2009).  "A RICO claim must be pleaded with particularity under Rule 9(b)."  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

## ARGUMENT

**I.     COUNTS I – V OF THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFFS LACK STANDING TO ASSERT RICO CLAIMS.**

"Standing generally is a threshold consideration for any Court before moving on to the merits.  However, RICO standing is unique in that a civil plaintiff has standing to assert a civil cause of action only if a violation of [18 U.S.C.] § 1962 proximately caused his injuries."  *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 495 (E.D. La. 2001).  "As a preliminary matter . . . a [18 U.S.C. § 1964(c)] plaintiff must establish that he has standing to sue."  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).  RICO's civil damages provision requires that a plaintiff be injured "by reason of" a RICO violation.  *See* 18 U.S.C. § 1964(c).  Therefore, "a RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation."  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 279 (1992) (O'Connor, J. concurring) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985)); *see also Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728 (8th Cir. 2004) ("[t]o have standing to bring a civil RICO claim, a plaintiff must have suffered injury 'by reason of' a RICO violation.").  Accordingly, to establish standing to assert a RICO claim, a plaintiff must allege:  (1) injury to his "business or property;" and (2) that such injury was "by reason of" the conduct constituting the violation.  As explained below, the Plaintiffs in this case have failed to allege facts sufficient to satisfy either factor and therefore lack standing.

### A.   Plaintiffs lack RICO standing because they cannot allege an injury to their "business or property."

To support a civil RICO claim, Plaintiffs must first allege that they have suffered an injury to their "business or property."  18 U.S.C. § 1964(c).  "The terms 'business or property' are, of course, words of limitation which preclude recovery for" other types of injuries, such as personal injuries and the pecuniary losses incurred therefrom.  *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).  To recover for such injury under RICO, the injury must be cognizable under the statute. *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1030 (D. Colo. 2021).  "RICO provides no redress for injury to a property interest that is contrary to public policy or the law."  *Id.* (citing *Doe*, 958 F.2d at 768).

Plaintiffs do not allege any injury to their "business."  Rather, Plaintiffs' alleged injury is pled as follows: "The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class' property by selling them 'Regular' marijuana for a much higher 'Premium' price."  *Complaint*, at ¶ 61; *see also id.*, at ¶¶ 35, 54, 68.  Plaintiffs further allege that "the overstatement of THC directly and proximately injured the Plaintiff and the Class' property by defrauding them and interfering with their use and enjoyment of their property."  *Id.*, at ¶ 62. Stated another way, Plaintiffs allege their injury to property is the value of the illegal marijuana they purchased as well as interference with their enjoyment of the Schedule I controlled substance (i.e., the federally-illegal marijuana they purchased was not as strong as they thought it should be). Unfortunately for the Plaintiffs, these types of injuries are not cognizable under RICO or any other federal law.

Of course, Plaintiffs' admitted purchase and possession of marijuana is plainly a violation of the Controlled Substances Act.  *See* 21 U.S.C. § 844(a) (making it a federal crime to possess a controlled substance); 21 U.S.C. § 812(c) Schedule I(c)(10) (identifying marijuana as a controlled

substance).  In fact, Plaintiffs' admissions regarding their facilitation of the testing of marijuana likely constitute a "distribution" offense.  *See Complaint*, at ¶¶ 33-34 ("So, Plaintiffs had some marijuana tested….Plaintiff's lab has tested not only samples from the cultivator Defendants but samples as well from other cultivators."); 21 U.S.C. § 841(a)(2) (making it a federal crime to distribute a controlled substance); 21 U.S.C. § 802(11) ("the term 'distribute' means to deliver a controlled substance or listed chemical); 21 U.S.C. § 802(8) ("the term 'deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled substance or listed chemical, whether or not there exists an agency relationship").  Injuries related to property which is illegal under federal law are not cognizable under RICO's civil remedy because that property interest is contrary to both federal public policy and federal law.  *See Sensoria*, 548 F. Supp. 3d at 1029–30 (dismissing civil RICO claim based on lack of cognizable property interest because "[t]he business or property interests [the plaintiff] seeks to vindicate are in a business that would grow, process, and sell marijuana.  Even if [the plaintiff] did not intend to invest in an illegal business, that was the nature of its operations.  [The plaintiff] seeks redress for those aspects of Clover Top Holdings, Inc.'s activities that themselves are unlawful."); *Shulman v. Kaplan*, No. 2:19-CV-05413-AB, 2020 U.S. Dist. LEXIS 244161 (C.D. Cal. Oct. 29, 2020) (holding that a remedy based on damage to a marijuana business would provide a remedy for actions that are unequivocally illegal under federal law and, as a result, the plaintiffs lacked standing to seek that relief).

Therefore, because Plaintiffs' purported RICO injury is directly tied to their purchase, possession and distribution of a product that is itself illegal under federal law, they lack standing to seek relief for that injury under RICO.  Accordingly, Plaintiffs' RICO claims should be dismissed for lack of RICO standing.

**B.**      ***Plaintiffs lack RICO standing because their purported injury was not caused by NSMC.***

Even if Plaintiffs' injury was cognizable under RICO (it is not), Plaintiffs still lack standing to assert their claims because Plaintiffs' purported injury was not proximately caused by NSMC. The United States Supreme Court has rejected the proposition that the "by reason of" limitation in 18 U.S.C. § 1964(c) requires a simple showing that the defendant's violation of 18 U.S.C. § 1962 was a "but for" cause of plaintiff's injury and has instead instructed that defendant's violation of 18 U.S.C. § 1962 must be the proximate cause of plaintiff's injury.  *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d at 495 (citing *Holmes*, 503 U.S. 258 at 265–66); *see also Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 446–47 (8th Cir. 2000) ("Plaintiffs have standing in a civil RICO case only if the RICO violations both factually and proximately caused injury to the plaintiffs' business or property.").

The application of the proximate cause requirement for a civil RICO violation in which the plaintiffs were participants in the allegedly illegal conduct is perhaps best illustrated in the line of cases arising from the development of internet gambling.  In those cases, frustrated online gamblers who lost money filed RICO actions against the casinos and various banking institutions on the theory that internet gambling was illegal under federal law.  Federal courts across the country routinely dismissed the RICO claims because, among other reasons, lack of RICO standing.  *See, e.g., In re Mastercard Int'l Inc.*, 132 F. Supp. 2d at 496; *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 187–88 (3d Cir. 2000); *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1243–44 (M.D. Ala. 2011); *Green v. Aztar Corp.*, No. 02 C 3514, 2003 U.S. Dist. LEXIS 14699, at *4–9 (N.D. Ill. Aug. 20, 2003).

For instance, in *In re Mastercard Int'l Inc.*, a consolidated multidistrict litigation proceeding, the district court granted a Rule 12(b)(6) motion to dismiss RICO claims brought by

disgruntled internet gamblers for lack of RICO standing.  132 F. Supp. 2d at 496.  The court reasoned that "unlike an ordinary RICO victim, in this case the allegedly injured plaintiffs, i.e., the players, can avoid any injury simply by walking away from the alleged wrongdoers, the casinos, by not playing in the casinos."  *Id.* (citing *Greate Bay Casino Corp.*, 232 F.3d at 187–88) (internal revisions omitted).  The court went on to explain that "[a]lthough plaintiffs cry out as victims in this case, they are in a precarious position because of their own voluntary acts of internet gambling.  Plaintiffs' own acts of accessing the internet, locating the casinos, entering their information, and playing electronic casino games, are all intervening causes that break the chain of causation with respect to the defendants' alleged activities, even if they were illegal."  *Id.*

Likewise, the district court looked to the typical RICO case to further highlight why the plaintiffs lacked causation to establish RICO standing.  "[T]he prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is without channeling his criminal activities through the enterprise that he has taken over."  *Id.* at 496–97 (quoting *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997)).  "Simply put, the Court finds that RICO, no matter how liberally construed, is not intended to provide a remedy to this class of plaintiff.  The remedial portion of the statute was intended to provide a remedy for victims of racketeering activity as described in section 1962.  Plaintiffs in these cases are not victims, they are independent actors who made a knowing and voluntary choice to engage in a course of conduct.  Litigation over their own actions arose only when the result of those actions became a debt that they did not wish to pay."  *Id.* at 497.

Plaintiffs' fundamental allegation in this case is that NSMC and the other Defendants' state-sanctioned medicinal marijuana operations are inherently illegal under federal law. *See Complaint*, at ¶ 1 ("Each Plaintiff files this suit to vindicate the federal laws prohibiting the cultivation and sale of D9 marijuana and their rights under the Racketeer Influenced and Corrupt Organizations Act[.]"); *id.* ("Plaintiff [sic] seeks redress under RICO, which requires those who engage in racketeering activity—including the commercial production of marijuana—to pay those they injure treble damages, costs, and attorneys' fees."). But like the voluntary internet gamblers who asserted RICO claims in *In re Mastercard Int'l Inc.* and *Greate Bay Casino Corp.*, Plaintiffs' voluntary participation in Arkansas' medical marijuana industry, by first visiting a physician to be certified as having a qualifying condition (in this case, it is alleged to be "chronic pain"), and then submitting such certification to the State of Arkansas to become a registered patient in possession of a medical marijuana card, and then purchasing medical marijuana "are all intervening causes that break the chain of causation with respect to the defendants' alleged activities, even if they were illegal." *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d at 496.

Plaintiffs were not victims of racketeering. Just like the internet gamblers who brought failed RICO claims, Plaintiffs could have avoided the alleged injury altogether by either: (a) purchasing products produced by one of the other five cultivators not named in this lawsuit or one or more of the 38 dispensaries that also are licensed to cultivate marijuana instead of purchasing the Defendants' products; or (b) not purchasing any marijuana products at all. Instead, they chose to repeatedly purchase marijuana products cultivated by NSMC and the other Defendants. RICO was not designed to remedy the type of claim Plaintiffs bring in this action and the Court should dismiss their RICO claims for lack of standing.

## II.    COUNTS I – V OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF *IN PARI DELICTO*.

The doctrine of *in pari delicto* is the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.  *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (quoting Black's Law Dictionary 806 (8th ed. 2004)).  "The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988).  "Traditionally, the defense was limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arose out of the same illegal act." *Id.* (citations omitted).  "Contemporary courts have expanded the defense's application to situations more closely analogous to those encompassed by the 'unclean hands' doctrine, where the plaintiff has participated 'in some of the same sort of wrongdoing' as the defendant." *Id.*  The policy underlying the defense is that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

Federal appellate courts have made clear that *in pari delicto* is a cognizable defense to a civil RICO claim.  *See, e.g., Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008) (holding *in pari delicto* is a cognizable defense to a RICO claim and agreeing that to allow co-conspirators to recover from each other would transfer ill-gotten gains between them); *Inge v. McClelland*, 725 Fed. Appx. 634, 639 (10th Cir. 2018) (affirming application of *in pari delicto* defense to a civil RICO claim and explaining the dismissal based on the defense was appropriate when the plaintiffs purchased and consumed illegal narcotics obtained through illicit means and the purported injuries stem from those illegal acts); *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437

F.3d 1145, 1152–56 (11th Cir. 2006) (affirming application of *in pari delicto* defense in a civil RICO case and acknowledging it would violate the policy underlying RICO to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute). Courts considering the application of the *in pari delicto* defense to causes of action created by federal statutes apply two factors: (1) the plaintiffs' active participation in the violation or not; and (2) the policy goals of the federal statute. *Edwards*, 437 F.3d at 1154–55.

Courts across the country have applied the *in pari delicto* defense to civil RICO claims when the individuals and entities asserting such claims were themselves participants in the alleged conduct that undergirds their RICO claim. For instance, in *Inge*, the United States Court of Appeals for the Tenth Circuit affirmed the district court's Rule 12(b)(6) dismissal of a civil RICO claim based on violations of the Controlled Substances Act. 725 Fed. Appx. at 639. In that case, a pharmacist allegedly filled the plaintiffs' prescriptions for thousands of powerful narcotic pills while knowing that there was no medical necessity or benefit to prescribing those medications. *Id.* at 636. The plaintiffs sued the pharmacist and asserted a civil RICO claim because the plaintiffs suffered numerous injuries as a result of their abuse of the narcotics they received from the pharmacist. *Id.*

The Tenth Circuit affirmed the district court's dismissal based on the *in pari delicto* defense. *Id.* at 639. The court explained that the defense was appropriate in that case because the plaintiffs admitted in their pleadings that they were active participants in the scheme to obtain narcotics through illicit means. *Id.* Likewise, the court determined that the policy goals of RICO supported application of the defense because, if the claim were allowed to proceed, the plaintiffs "would in essence be rewarded for their illegal behavior in a way never intended by Congress in RICO." *Id.* In sum, the court determined the *in pari delicto* defense barred the plaintiffs' RICO

claims because they were active participants in the scheme that violated the Controlled Substances Act and the underlying policy of RICO weighed against allowing the claims to proceed.

The outcome is the same in this case.  The thrust of Plaintiffs' Complaint here is that NSMC, the other Defendants, and the other individuals and entities who lawfully participate in the state-authorized medical marijuana industry are all liable under RICO because the cultivation, distribution, and possession of marijuana is illegal pursuant to the Controlled Substances Act.  The fundamental flaw with Plaintiffs' theory, however, is that ***Plaintiffs themselves are active participants in the very same practice that is alleged to violate federal law***.  If NSMC and the other Defendants are in violation of the Controlled Substances Act via their cultivation and distribution of marijuana products, then Plaintiffs themselves are equally liable as a result of their purchase and possession of those very same marijuana products.  *See* 21 U.S.C. § 844(a) (making it a federal crime to possess a controlled substance); 21 U.S.C. § 812(c) Schedule I(c)(10) (identifying marijuana as a controlled substance).

Plaintiffs further admit that they themselves routinely purchased federally-illegal marijuana for the purpose of testing it, presumably at one of the labs licensed by the State of Arkansas to test marijuana – the very same acts they assert constitute a RICO conspiracy giving rise to their alleged damages.  *See Complaint*, at ¶¶ 33-34 ("Plaintiff's lab has tested not only samples from the cultivator Defendants but samples as well from other cultivators).  By admitting to purchasing marijuana for the purpose of having it tested by "Plaintiff's lab," Plaintiffs have necessarily admitted to participating in the distribution of marijuana. *See* 21 U.S.C. § 841(a)(2) (making it a federal crime to distribute a controlled substance); 21 U.S.C. § 802(11) ("the term 'distribute' means to deliver a controlled substance or listed chemical); 21 U.S.C. § 802(8) ("the term 'deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled

substance or listed chemical, whether or not there exists an agency relationship"). Accordingly, the first prong of the *in pari delicto* defense weighs heavily in favor of dismissal of Plaintiffs' claims.

The public policy underlying RICO also weighs in favor of dismissal. As the Eleventh Circuit has stated, "Congress intended RICO's civil remedies to help eradicate 'organized crime from the social fabric' by divesting 'the association of the fruits of ill-gotten gains.'" *Edwards*, 437 F.3d at 1155 (citations omitted). In that case, the court upheld the dismissal of claims brought on behalf of an organization at the center of a Ponzi scheme. *Id.* The court recognized that "recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators." *Id.* Likewise, as the Tenth Circuit explained in *Inge*, allowing active participants to an illegal drug scheme to prevail on a civil RICO claim against another individual or entity involved in the same scheme is entirely contrary to the public policy supporting RICO. 725 Fed. Appx. at 639.

Like in *Inge* and *Edwards*, applying RICO's policy objectives to the case at bar confirms Plaintiffs' RICO claims should be dismissed based on their own conduct. Allowing Plaintiffs to proceed on their civil RICO claims against NSMC and the other Defendants would only serve to advance the notion that Plaintiffs could recover damages based on the price of the illegal marijuana they purchased from the cultivators, distributors, and testers of the same product. Any such outcome would not help eradicate "organized crime from the social fabric," but would instead transfer allegedly ill-gotten gains from one side of the illegal transaction to the other. There can be no real dispute that such an approach does not advance the policy objectives of RICO. As a result, the Court should find Plaintiffs' claims are barred by *in pari delicto* and should dismiss the claims with prejudice.

III.    **COUNTS I–V OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF'S REMEDY VIOLATES PUBLIC POLICY.**

Federal courts have also dismissed civil RICO claims related to state-approved marijuana operations because the relief sought by the plaintiffs would inherently violate federal public policy. Although somewhat analogous to the considerations underlying the *in pari delicto* defense, federal public policy provides an independent basis upon which to dismiss Plaintiffs' claims against NSMC. *Shulman v. Kaplan*, No. 2:19-CV-05413-AB, 2020 U.S. Dist. LEXIS 244161 (C.D. Cal. Oct. 29, 2020), is particularly instructive on this point. In *Shulman*, the plaintiffs and defendants were involved in the production, marketing, and sale of cannabis. *Id.* at *3–7. The plaintiff enlisted the help of several defendants to grow and expand her cannabis business. *Id.* At some point, the relationship between the parties broke down and defendants allegedly engaged in illegal conduct that wholly undermined and damaged the plaintiffs' cannabis business, including production and investment. *Id.* The plaintiff then filed suit in federal court alleging a host of violations, including two RICO claims. *Id.* The defendants moved to dismiss, arguing the plaintiffs "do not have a legally cognizable interest in their RICO claims because the alleged damages relate to a cannabis business which is illegal under the federal Controlled Substances Act." *Id.*

The district court granted the motion to dismiss and dismissed the plaintiffs' claims based on public policy grounds. The court reasoned that "Plaintiffs damages under RICO are inextricably intertwined with their cannabis cultivation—any relief would remedy Plaintiffs' lost profits from the sale, production, and distribution of cannabis." *Id.* Based on the requested remedy, the court held "that any potential remedy in this case would contravene federal law under the [Controlled Substances Act]. A court order requiring monetary payment to Plaintiffs for the loss of profits or injury to a business that produces and markets cannabis would, in essence

(1) provide a remedy for actions that are unequivocally illegal under federal law; and (2) necessitate that a federal court contravene a federal statute (the [Controlled Substances Act]) in order to provide relief under a federal statute (RICO). The Court finds this approach to be contrary to public policy." *Id.* The court further noted that "it seems implausible that RICO—a federal statute—was designed to provide redress for engaging in activities that are illegal under federal law." *Id.*

Like the relief sought in *Shulman*, Plaintiffs' requested relief inherently conflicts with federal public policy such that the Court should dismiss Plaintiffs' RICO claims. Plaintiffs' Complaint asks the Court to order NSMC and the other Defendants to pay Plaintiffs either (1) three times the damages based on the allegedly overstated THC content of the products Plaintiffs purchased; or (2) "disgorgement to their property" which is presumably a request to pay money from NSMC's medical-marijuana profits to Plaintiffs. *Complaint*, at Prayer For Relief.[2] Under either remedy, the Court would be required to order Defendants to transfer money gained from an operation that allegedly violates the Controlled Substances Act to pay Plaintiffs for the alleged damages to the illegal marijuana they purchased.

As the *Shulman* court explained, allowing Plaintiffs to proceed on their RICO claims would essentially provide a remedy for Plaintiffs' own violations of federal law and require the Court to contravene the Controlled Substances Act to provide relief under RICO. The court "cannot remedy Plaintiffs' injuries because doing so would result in an illegal mandate; in short, Plaintiffs' injuries to their cannabis [product] are not redressable under RICO." *Shulman*, 2020 U.S. Dist. LEXIS

---

[2] The Plaintiffs also explicitly seek to "disgorge [the Defendants'] profits into a common fund." *See Complaint*, at ¶ 73.

244161, at *6.[3]  As a result, the Court should dismiss Plaintiffs' RICO claims based on federal public policy.

## IV.    PLAINTIFFS' STATE-LAW CLAIMS SHOULD BE DISMISSED.

Plaintiffs' final cause of action is based in fraud, but also makes a passing reference to the ADTPA.[4]  *Complaint*, at ¶ 75.  The root of the claim is that Defendants misrepresented the THC content of their cannabis products in order to charge an inflated price.  *Id.*, at ¶¶ 61, 35, 54, 68. Under Arkansas law, fraud requires "a false representation (usually of a material fact), knowledge or belief by the defendant that the representation is false, intent to induce the plaintiff's reliance, justifiable reliance by the plaintiff, and resulting damage to the plaintiff."  *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 405 (8th Cir. 2013).  A violation of the ADTPA requires that a defendant engage in an unconscionable, false, or deceptive act or trade practice.  Ark. Code Ann. § 4-88-107(a)(10).  The ADTPA grants a right of recovery to "[a]ny person who suffers actual damage or injury as a result of an offense or violation."  Ark. Code Ann. § 4-88-113(f).

Because the claim sounds in fraud and deception, Rule 9(b)'s heightened pleading standard applies.  Fed. R. Civ. P. 9(b); *Dickinson v. SunTrust Mortg., Inc.*, No. 3:12-CV-00112, 2015 U.S. Dist. LEXIS 53481, at *3 (E.D. Ark. Apr. 23, 2015) ("[T]o survive a motion to dismiss, ADTPA claims must be pled with the particularity required under Federal Rule of Civil Procedure 9(b)");

---

[3] *See also Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 854 (B.A.P. 10th Cir. 2015) (affirming bankruptcy court's dismissal of Chapter 7 bankruptcy case because, among other things, "[a]dministering the debtors' Chapter 7 estate would require the Trustee to either violate federal law by possessing and selling the marijuana assets or abandon them.  If he did the former, the Trustee would be at risk of prosecution; if he did the latter, the creditors would receive nothing while the debtors would retail all of their assets and receive a discharge as well.")

[4] The Complaint does not identify the specific provision of the ADTPA for which the claim is brought.

*Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013) ("Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims."); *cf. Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075–76 (8th Cir. 2018) (concluding that violations of state consumer protection statute "trigger[ed] Rule 9(b)'s heightened standard," given plaintiffs' characterization of defendant's statements "as misrepresentations or deception").

Merely claiming that a statement is "false" is not enough; Plaintiffs must allege particularized facts explaining why the statement is false. *Trooien v. Mansour*, 608 F.3d 1020, 1029–30 (8th Cir. 2010). Rule 9(b)'s standard is quality, not quantity. *See Jarrett*, 8 F. Supp. 3d at 1084 ("Conclusory allegations of fraud and deception are insufficient." (quoting *McNeil v. Metro. Nat'l Bank*, No. 4:13-CV-00076, 2013 U.S. Dist. LEXIS 68403, at *6 (E.D. Ark. May 14, 2013))); *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) ("[T]he complaint must identify the who, what, where, when, and how of the alleged fraud." (citation and quotation marks omitted)); *see also Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 875–76 (D. Minn. 2012). Plaintiffs have not alleged any Rule 9(b)-quality facts that NSMC made actionable misstatements or omissions and, as a result, the fraud/ADTPA claim should be dismissed.

As an initial matter, instead of alleging particularized facts about NSMC's supposed fraud, the Complaint refers to "Defendants" collectively dozens of times. Those allegations do not satisfy Rule 9(b). When multiple defendants are involved, a plaintiff must identify "with particularity" how a "particular defendant misled or deceived" them. *Green v. Skyline Highland Holdings LLC*, No. 4:17-CV-00534, 2018 U.S. Dist. LEXIS 98403, at *6–7 (E.D. Ark. June 12, 2018). "It is not sufficient to attribute alleged false statements to 'defendants' generally." *Trooien*, 608 F.3d at 1030; *see also Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (holding that allegations that "attributed fraudulent representations and conduct to

multiple defendants generally, in a group pleading fashion," did "not come close to meeting this [Rule 9(b)] standard").

All-for-one allegations that lump defendants together fail Rule 9(b)'s requirements because they do not "inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)); *see also Quintero Cmty. Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1010 (8th Cir. 2015) ("Appellants' shotgun-style allegations of wrongdoing by all the Director Defendants 'generally, in a group pleading fashion . . . do[es] not satisfy Rule 9(b).'" (quoting *Streambend*, 781 F.3d at 1013)). Applying that principle, courts in this circuit have dismissed ADTPA claims sounding in fraud when, as here, the plaintiff failed to distinguish among the defendants. *See, e.g.*, *Edwards v. Camden Operations, LLC*, No. 1:17-CV-01054, 2018 U.S. Dist. LEXIS 120314, at *17–18 (W.D. Ark. July 19, 2018) (dismissing ADTPA claims because plaintiffs improperly relied on "group pleading tactics" and such "generalized pleading is insufficient under Rule 9"); *Green*, 2018 U.S. Dist. LEXIS 98403, at *10–11 (dismissing ADTPA claim because the complaint engaged in "group pleading" by referring "to a number of allegedly deceptive or misleading actions" but failing to "attribute any of them to any single or distinct group of defendants").

Just as in *Edwards* and *Green*, Plaintiffs' generalized pleading in this case lumps the Defendants together.  To satisfy the heightened standard, Plaintiffs' Complaint must discuss "the time, place, and contents of the false representations, as well as the identity of the person making the false representation and what was obtained or given up thereby."  *Whatley v. Recontrust Co. NA*, No. 3:10-CV-242, 2010 U.S. Dist. LEXIS 125122, at *17 (E.D. Ark. Nov. 23, 2010).  The Complaint fails to identify the "who, what, where, when, and how of the alleged fraud" and therefore does not satisfy Rule 9(b).  *Olson*, 831 F.3d at 1070 (citations and quotations omitted);

*see also Jarrett*, 8 F. Supp. 3d at 1084.  For instance, the Complaint fails to identify any specific false representations made by NSMC, the specific NSMC products Plaintiffs allegedly purchased, which NSMC products had allegedly inflated THC contents on the label, the results from Plaintiffs' own "testing" which allegedly reveals a lower THC content, when the products were purchased, from where they were purchased, or any of the other particulars of NSMC's alleged fraud or violation of the ADTPA.  In fact, the Complaint is essentially devoid of any specific, particular factual allegations related to NSMC that would satisfy Rule 9(b)'s heightened pleading standard.

Likewise, the Complaint utterly fails to allege facts plausibly alleging Plaintiffs' reliance on any of the alleged misrepresentations.  Reliance is an element of Plaintiffs' fraud claim as well as an element of their deception-based ADTPA claim. *See Moore v. Mack's Sport Shop, LLLP*, No. 4:16-CV-00540, 2017 U.S. Dist. LEXIS 160666, at *23–26 (E.D. Ark. Sept. 29, 2017); *Motal v. Allstate Prop. & Cas. Ins. Co.*, No. 4:20-CV-01011, 2021 U.S. Dist. LEXIS 34149, at *11–14 (E.D. Ark. Feb. 24, 2021).  Instead, the Complaint merely concludes that "Plaintiffs reasonably relied upon Defendants' intentional misrepresentation to his [sic] detriment." *Complaint*, at ¶ 77. Such conclusory allegations, however, are insufficient under the heightened pleading standard. *Whatley*, 2010 U.S. Dist. LEXIS 125122, at *17 (citing *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002)).

Accordingly, the Court should dismiss those claims pursuant to Rule 12(b)(6) because the Complaint fails to satisfy the heightened pleading standard required by Rule 9(b).

## <u>CONCLUSION</u>

Plaintiffs were (and presumably still are) active participants in the very industry they challenge in this case.  Their own allegations confirm they violated the Controlled Substances Act when they purchased medicinal marijuana cultivated by NSMC and other Defendants, and then created a scheme to routinely transport those products to "Plaintiffs lab" for additional testing.  Despite those admissions, Plaintiffs ask the Court to order NSMC and others to pay them an undisclosed sum of money to compensate Plaintiffs for the allegedly inflated price they paid for illegal marijuana.  The Court should reject Plaintiffs' invitation to do so and, for the reasons explained above, should dismiss each of Plaintiffs' claims.

Respectfully submitted,

BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201
Telephone: (501) 372-6175

By:   J. Cotten Cunningham, Ark. Bar No. 97238
      ccunningham@barberlawfirm.com
      Jerry D. Garner, Ark. Bar No. 2014134
      jgarner@barberlawfirm.com
      Robbin S. Rahman, Ark. Bar No. 2017268
      rrahman@barberlawfirm.com

*Attorneys for Defendant NSMC-OPCO, LLC*